IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TY M. GRABITSKE and                                        OPINION and ORDER
ANGELA L. GRABITSKE,
                                                                      10-cv-267-bbc
        Appellants,

    v.

BRITTINGHAM & HIXON LUMBER CO.,

        Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        On March 9, 2009, appellants Ty and Angela Grabitske filed a chapter 7 bankruptcy petition in this district. Appellee Brittingham & Hixon Lumber Co. was listed as a creditor in the bankruptcy proceedings, but did not file an objection to the discharge of its claims against appellants within the time allowed for creditors to do so. After the case was closed, appellee filed motions to reopen the case and file a late adversary proceeding. The bankruptcy court granted both motions, whereupon appellants filed this appeal to challenge the bankruptcy court's decision.

        In an order dated August 13, 2010, I concluded that appellants had failed to establish that this court had jurisdiction over their appeal. The bankruptcy court's decision allowing

1

appellee to file a late adversary proceeding was not a final order within the meaning of 28 U.S.C. § 158(a)(1), and appellants did not explicitly seek leave to appeal an interlocutory order. I gave appellants an opportunity to explain why this appeal should be heard. Appellants have responded with a motion asking the court to construe their appeal as including a request to file an interlocutory appeal, dkt. #8. Appellee has not opposed the request.

I conclude that it is appropriate to review the bankruptcy court's interlocutory order because it concerns a controlling question of law on which there is substantial ground for difference of opinion and a decision on the issue will advance the litigation. In addition, I conclude that Bankruptcy Rules 4007(c) and 9006(b)(3) restrict the bankruptcy court's discretion to allow untimely dischargeability complaints and that appellee has failed to show their entitlement to any applicable equitable defense that would permit the bankruptcy court to allow the untimely complaint. Therefore, I am reversing the bankruptcy court's decision allowing appellee to file an adversary proceeding.

The following summary of relevant facts and proceedings is drawn from the record of the proceedings before the bankruptcy court. (All citations in the background section are to the bankruptcy court's docket, In re: Ty M. Grabitske & Angela L Grabitske, 09-11349-tsu.)

2

BACKGROUND

Appellants Ty and Angela Grabitske filed for chapter 7 bankruptcy on March 9, 2009, in the United States Bankruptcy Court for the Western District of Wisconsin. Appellee Brittingham & Hixon Lumber Co. was listed as a creditor in the bankruptcy proceedings. Throughout the bankruptcy proceedings, appellants were represented by David Russell and appellee was represented by Stephen Chiquoine. Pursuant to a stipulation between the parties, the court entered an order on June 24, 2009, extending the time for creditors to file objections to the discharge of appellants' debts to "not later than ninety days after this Order." Dkt. #26. This extended the deadline, also known as the "bar date," to September 22, 2009.

In the weeks following, the two lawyers attempted to schedule a time for Chiquione to examine appellant Ty Grabitske pursuant to Bankruptcy Rule 2004, to determine whether any valid ground existed for filing an objection to the discharge of Ty Grabitske's debts. The parties had difficulty scheduling the exam, though appellee never sought an order from the bankruptcy court ordering Grabitske to appear for a Rule 2004 exam.

On August 3, 2009, appellants' attorney, Russell, wrote to appellee's attorney, Chiquoine, in which Russell referred to the extended bar date, stating "I am willing to extend that 'stipulated date.' I understand that the date of extension is now mid-September." Dkt. #45, exh. A. On September 17, 2009, Chiquione wrote to Russell as follows:

3

> Since it appears that we are not going to get this case settled, I would appreciate it if you would immediately provide me with three days . . . when you can produce Mr. Grabitske within the next 30 days. I will also be assuming that you are agreeing to extend the date to file an objection through the end of October so that we can accomplish a voluntary 2004 Exam. . . . If for any reason you are not in agreement with an extension as set forth above, please contact me immediately. I trust that under <u>those</u> circumstances, we have a ten day extension at which point I will get our complaint filed, obtain a 2004 Order and we can 'let God sort them out.'

Dkt. #45, exh. B (underlining in original).

The ninety-day court-ordered extension entered on June 24, 2009, expired on September 22, 2009. None of appellants' creditors had filed an objection to discharge of debts and the bankruptcy court closed the case on September 24, 2009.

On October 1, 2009, Chiquione, who had not yet received notice that the bankruptcy case had been closed, wrote again to Russell, stating that he was "a little concerned" that Russell had not responded to his September 17 letter. Chiquione enclosed a proposed written stipulation to extend the time for filing an adversary proceeding, asking Russell to sign and return the stipulation immediately. Dkt. #45, exh. C.

On October 7, 2009, Russell emailed Chiquione to say that the case had been closed and that "the court has now lost jurisdiction of the matter." Dkt. #35, exh. D.

On November 18, 2009, appellee filed a motion to reopen the bankruptcy case. Dkt. #31. As grounds for the motion, appellee alleged that "the creditor's attorney and the debtor's attorney had informally agreed on numerous occasions to an adjournment of the

4

date set by the court for an adversary proceeding to be filed." Id. Appellee asked the court to "enforce the inherent fairness provisions contained within the Bankruptcy Act by reopening the case to allow for an adversary action to be filed and heard." Appellants objected to the reopening of the case. Dkt. #35. The bankruptcy court granted the motion on January 28, 2010. On January 25, 2010, appellee filed a motion to allow the late filing of an adversary proceeding, asking the court to apply the doctrine of laches to appellants' objections. Dkt. ##45, 51. The bankruptcy court granted that motion on March 10, 2010. Dkt. #53.

In granting appellee's motion to file a late adversary proceeding, the bankruptcy court found that the parties had been negotiating for some time and that part of the discussions involved "a consensual extension of the deadline to object to discharge." Id. The court concluded that "[t]he correspondence presented by the creditor's counsel indicates that there was a belief that such an extension was part of the negotiation process, and it is inequitable to ignore these facts." Id.

## OPINION

### A. Motion for Leave to Appeal

Under 28 U.S.C. § 158(a)(3), federal district courts have jurisdiction to hear appeals from interlocutory orders with leave of the court. Because neither § 158 nor the Federal

Rules of Bankruptcy Procedure discuss the standards by which a district court is to determine whether to grant leave to appeal from an interlocutory order, district courts generally look to 28 U.S.C. § 1292(b), the analogous statute governing interlocutory appeals from district to circuit courts. E.g. In re Sandenhill, Inc., 304 B.R. 692, 694 (E.D. Pa. 2004); In re ANR Advance Transportation Co., 302 B.R. 607, 612-13 (E.D. Wis. 2003); In re Dino's, Inc., 183 B.R. 779, 781 (S.D. Ohio 1995). Under § 1292(b), an interlocutory appeal should be heard only if the appeal concerns "a controlling question of law as to which there is substantial ground for difference of opinion and [ ] an immediate appeal from the order may materially advance the ultimate termination of the litigation."

The appeal in this case concerns a controlling question of law and would "materially advance the ultimate termination of the litigation" because a reversal of the bankruptcy court's order would terminate the underlying bankruptcy case, whereas affirming it would allow appellee to proceed with an adversary proceeding against appellants. In addition, the several cases appellants cite in their briefs show that there is a substantial ground for difference of opinion regarding whether the bankruptcy court had authority to allow appellee to file a late dischargeability complaint under the circumstances. At least one other court has allowed appeal of an interlocutory order on the same question of law. In re Price, 79 B.R. 888, 889 (9th Cir. B.A.P. 1987).

6

B.  Bankruptcy Court's Order Allowing Late Dischargeability Complaint

When a district court reviews a bankruptcy court order, the district court applies a "clearly erroneous" standard to questions of fact, Fed. R. Bankr. P. 8013, and reviews questions of law and the application of law to fact *de novo*. Mungo v. Taylor, 355 F.3d 969, 974 (7th Cir. 2004). The facts in this case are not in dispute and the single issue presented on appeal is whether the bankruptcy court erred in allowing appellee to file a late dischargeability complaint. This is a legal question subject to *de novo* review.

Bankruptcy Rule 4007(c) provides that where, as here, a creditor files a complaint to determine the dischargeability of a debt under 11 U.S.C. § 523, the complaint "shall be filed no later than 60 days after the first date set for the meeting of creditors." Rule 4007(c) states further that "[o]n a motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed *before* the time has expired." (Emphasis added). Reinforcing Rule 4007(c)'s restriction on extension of the filing deadline, Rule 9006(b)(3) allows enlargement of "the time for taking action" under Rule 4007(c) "only to the extent and under the conditions stated in [that rule]."

On June 24, 2009, the bankruptcy court extended the 4007(c) deadline within which a creditor could file a complaint against appellant to September 22, 2009. There is no question that appellee failed to file a complaint seeking declaration of nondiscargeability or

7

a motion for an extension of time in which to file such complaint before September 22. Nevertheless, the bankruptcy court concluded that because the parties were "clearly negotiating, and part of the discussions involved a consensual extension of the deadline to object to discharge," it would be "inequitable" to prohibit appellee from filing a late adversary complaint.

The bankruptcy court does not indicate under what authority it extended the 4007(c) deadline, though both appellants and appellee assume the court was invoking its general equitable powers under section 105(a) of the bankruptcy code. Under 11 U.S.C. § 105(a), the bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the bankruptcy code]." The parties disagree whether § 105(a) provides the authority to allow the late complaint under the circumstances of this case. Appellants contend that bankruptcy courts may allow creditors to file late dischargeability complaints only in extraordinary circumstances, such as where a creditor never received notice of the bankruptcy proceedings or the bar date or where the bankruptcy court misled a party as to the correct bar date. E.g., In re Smith, 582 F.3d 767, 780 (7th Cir. 2009) (creditors who did not receive notice of debtor's bankruptcy could file late dischargeability complaints); In re Kennerley, 995 F.2d 145, 147-48 (9th Cir. 1993) (bankruptcy court may extend bar date only where court explicitly misleads party as to deadline for filing complaint); In re Sutton, 283 B.R. 592, 595 (Bkrtcy. D. Nev. 2002)

8

(extending bar date where court misled party as to deadline). Although appellee argues implicitly that the bankruptcy court has broader authority to invoke general principles of equity than appellants contend, it cites no cases in which a bankruptcy court allowed a late proceeding.

In addressing this issue, the Court of Appeals for the Seventh Circuit has held that because the timeliness provisions are not "jurisdictional," they are subject to certain "equitable defenses" that apply to other deadlines and statutes of limitation. In re Kontrick, 295 F.3d 724, 733 (7th Cir. 2002), aff'd on other grounds, Kontrick v. Ryan, 540 U.S. 443, 447-48, n. 3 (2004). Thus, a bankruptcy court may modify a deadline when a particular equitable defense applies under the facts of a case. However, the court of appeals has never held that a bankruptcy court may invoke general perceptions of equities to modify the 4007(c) deadlines, and rulings by the court of appeals in the bankruptcy setting suggest that the court of appeals would reject such a rule.

Although on its face § 105(a) appears to grant broad discretionary powers to the bankruptcy court, the Court of Appeals for the Seventh Circuit has explained that § 105(a) should be used only in limited circumstances and "within the confines of the Bankruptcy Code." Disch v. Rasmussen, 417 F.3d 769, 777 (7th Cir. 2005). "Otherwise, there is a real risk that more particular restrictions found throughout the Code would amount to nothing, because the court could always use the residual equitable authority of § 105(a)." Id.

9

(warning that bankruptcy judge "does not have free-floating discretion to redistribute rights in accordance with his personal views of justice and fairness, however enlightened those views may be, or [to] use the court's equitable power to circumvent the Code.") (internal citations omitted); see also In re Kmart Corp., 359 F.3d 866, 871 (7th Cir. 2004) ("[T]he power conferred by § 105(a) is one to implement rather than override."); In re Lloyd, 37 F.3d 271, 275 (7th Cir. 1994); Matter of Chicago, Milwaukee, St. Paul, & Pacific R.R. Co., 791 F.2d 524, 528 (7th Cir. 1986).

The court of appeals' decision in In re Greenig, 152 F.3d 631 (7th Cir. 1998), is instructive on this point. The bankruptcy court granted a creditor's motion to file untimely proofs of claim after the debtors' reorganization plans had been confirmed. Id. at 633. The court of appeals held that the bankruptcy court had exercised its authority under § 105 improperly by allowing the creditor to circumvent Bankruptcy Rule 3002(c) and file the claims. Id. at 635. The court explained that although the bankruptcy court was not absolutely precluded from allowing late-filed claims, the authority to do so must be based on grounds found elsewhere in the Bankruptcy Code or Rules and not under the court's general § 105(a) powers. Id. Otherwise, the bankruptcy rules that structure the way in which proofs of claim must be presented would be meaningless.

Similarly, in Disch, 417 F.3d at 778, the court of appeals held that the bankruptcy court could not rely on its equitable powers under § 105(a) to revoke a debtor's discharge,

10

because § 727(d) of the Bankruptcy Code provides a list of specific grounds for doing so. The court of appeals reasoned that if § 105(a) provided a "back door" around the list in § 727(d), the list might as well not exist. Id.

Thus, under the court of appeals' rulings in Disch and Greenig, the bankruptcy court's authority to invoke § 105(a) and permit appellee to file a late adversary complaint is limited generally to those situations in which another provision of the Bankruptcy Code or Rules permits it. Read together, these two rules, place specific limits on the bankruptcy court's authority to extend the time in which a creditor may file a dischargeability complaint. Under Rule 4007(c), a dischargeability complaint must be filed no later than 60 days after the first date set for the meeting of creditors and a motion to extend the dischargeability complaint deadline must be filed before the deadline expires. If a complaint is not filed timely, the debt is discharged. Rule 9006(b)(3) reinforces the restrictive regime set forth in Rule 4007(c) by permitting the bankruptcy court to enlarge the time to file a dischargeability complaint under Rule 4007(c) *"only to the extent and under the conditions stated in [Rule 4007(c)]."* (Emphasis added.) Appellee has not explained how a possible application of general equitable principles under § 105(a) would square with Rule 9006(b)(3), and therefore has failed to show that applying § 105(a), would enforce Rule 4007(c) instead of violating it.

As mentioned above, however, the Court of Appeals for the Seventh Circuit has held

11

that the 4007(c) deadlines are subject to equitable defenses. Thus, although the bankruptcy court is limited generally by Rules 4007(c) and 9006(b)(3) and the holdings in Disch and Greenig, a bankruptcy court may extend a deadline when a specific equitable defense applies. Kontrick, 295 F.3d at 730. The question is whether a particular equitable defense applies to this case that would allow affirmance of the bankruptcy court's order. Among the equitable defenses to statutory filing deadlines are "the defenses of waiver, estoppel, and equitable tolling." Id. (citing United States v. Locke, 471 U.S. 84, 94, n.10 (1985)). These defenses must be applied in a manner consistent with the Bankruptcy Code and "the manifest goals of Congress to resolve the matter of dischargeability promptly and definitively in order to ensure that the debtor receives a fresh start unobstructed by lingering doubts about the finality of the bankruptcy decree." Id. The question is whether the facts related to the parties' negotiations, including their exchange of letters and emails, satisfy the elements of an equitable defense that would preclude appellants from objecting to appellee's request to file an untimely complaint.

On appeal, appellee has not argued that a particular defense applies. However, before the bankruptcy court granted appellee's motion to file a late complaint, appellee's counsel wrote to the bankruptcy judge suggesting that the court apply the doctrine of laches to bar appellants from raising objections to the untimely complaint. The doctrine of laches "bars a party's rights when the party has unreasonably delayed their assertion so as to cause

12

prejudice to the opposing party." Hawxhurst v. Pettibone Corp., 40 F.3d 175, 181 (7th Cir. 1994). In this case, the bankruptcy court did not suggest a finding that appellants delayed unreasonably in asserting their rights; rather, appellants objected to appellee's untimely complaint as soon as it was suggested. Thus, the doctrine of laches does not apply.

In addition, the facts of this case could not satisfy the elements of equitable estoppel, waiver, equitable tolling or any other equitable defense. For example, equitable estoppel would apply only if appellants had taken active steps to prevent appellee from filing a non-dischargeability complaint. Smith v. Potter, 445 F.3d 1000, 1010 (7th Cir. 2006) (Equitable estoppel "only comes into play if the defendant takes active steps to prevent the plaintiff from suing in time.") (citations omitted); see also Soignier, 92 F.3d at 554; Mull v. ARCO Durethene Plastics, Inc., 784 F.2d 284, 292 (7th Cir. 1986) ("Equitable estoppel is available only if [plaintiff's] otherwise untimely filing was the result either of a deliberate design by [defendant] or of actions that [defendant] should unmistakably have understood would cause [plaintiff] to delay filing his charge.") (citation and quotation omitted); In re Pendergrass, 376 B.R. 473, 479-80 (Bkrtcy. E.D. Pa. 2007) (holding that neither equitable tolling nor equitable estoppel applies where creditor's late filing of his dischargeability complaint was attributable to his attorney's error, not as result of any misleading conduct by debtor); In re Davis, 330 B.R. at 611 (although debtor and creditor had been discussing possible consent decree related to dischargeability of debt, debtor was not equitably estopped

13

from objecting to creditor's untimely dischargeability complaint because creditor's attorney was aware of deadline and procedural rules).

Neither the record nor the findings of the bankruptcy court contain any evidence that appellants tried to stop appellee from filing a non-dischargeability action. Appellee argues that "misrepresentation or deceptive conduct" is shown by Russell's August 3, 2009 letter, in which Russell wrote that he was "willing to extend that stipulated date," combined with Russell's failure to respond to Chiquione's October 3, 2009 letter, in which Chiquione asked for an extension of the bar date to the end of October. I disagree. Although Russell told Chiquione that he was willing to stipulate to an extended bar date, Chiquione did not follow up on this offer until the bar date had nearly arrived. At no time did Russell tell Chiquione that the bar date had been extended or that Russell would seek the extension himself. Chiquione need only have checked the docket in the bankruptcy proceedings to determine that the bar date had not been extended. Indeed, Chiquione's October 3 letter makes it clear that he was aware it had never been extended. Appellants' counsel was under no obligation to instruct appellee's attorney of the deadline for filing an adversary proceeding or otherwise provide advice to appellee's counsel as to how he should proceed with appellee's claim against appellants.

Moreover, even if appellants' counsel had misled appellee into believing that the bar date would be extended, appellee's counsel still had an obligation to insure that it would

14

happen.  An extension of the bar date takes more than wishing; it requires a court order. Appellee could have filed its own motion for extension of time before the passage of the bar date, citing Russell's August 3 letter in support.  Instead, appellee waited until nearly one month after the bankruptcy case had been closed to move to reopen the case for the purposes of filing an adversary complaint.  Nothing that appellants or their attorney did, or failed to do, misled appellee into thinking that an extension had already been granted or otherwise affected his ability to file a non-dischargeability action.

Equitable tolling also would not apply to extend the deadline.  Equitable tolling applies when "despite all due diligence, a plaintiff cannot obtain the information necessary to realize that he may possibly have a claim." Jones v. Res-Care, Inc., --- F.3d ----, 2010 WL 2788506, *3 (7th Cir. 2010) (quoting Beamon v. Marshall & Ilsley Trust Co., 411 F.3d 854, 860 (7th Cir. 2005)); see also Soignier v. American Bd. of Plastic Surgery, 92 F.3d 547, 553 (7th Cir. 1996).  Appellee knew that appellants had filed a bankruptcy petition and had listed appellee as a creditor.  It knew it had claims against appellants and was attempting to determine whether the facts and circumstances of those claims could render them non-dischargeable.  Although appellee was attempting to conduct a Rule 2004 review of appellants, it was on notice that it had to file a dischargeability complaint by September 22, 2009.  Appellee never sought an order from the court compelling a 2004 review and never sought an extension of time in which to file a dischargeability complaint.  In other words,

15

appellee could have acted to protect its interests, but did not. In that circumstance, equitable tolling does not apply. E.g., In re Yashaya, 403 B.R. 278, 287 (Bkrtcy. E.D.N.Y. 2009) (declining to apply equitable tolling where creditor knew he had potential claim and knew of the filing deadline for dischargeability complaints, but "did not act diligently in protecting his legal rights"); In re Davis, 330 B.R. 606, 612 (Bkrtcy. E.D. Tenn. 2005) (equitable tolling does not apply where creditor knew of debtor's bankruptcy filing, was listed as a creditor and received notice of the date for filing dischargeability complaints).

Finally, waiver would not apply to toll the deadline. Waiver applies where a party fails to raise a defense, such as a statute of limitations or statutory deadline, in a motion or responsive pleading. Kontrick, 540 U.S. at 459 (debtor waived timeliness issue it raised only after the bankruptcy court reached merits of creditor's objection). In this case, appellants objected to appellee's filing of an untimely complaint on multiple occasions, beginning when appellee filed a motion to reopen the bankruptcy proceedings.

In sum, neither the bankruptcy court's findings nor the additional facts in the record satisfy the elements of an equitable defense that would have tolled the bar date or otherwise given the bankruptcy court authority to allow appellee to file an untimely non-dischargeability complaint. Accordingly, the bankruptcy court's order allowing the complaint will be reversed.

16

ORDER

IT IS ORDERED that

1. Appellants Ty and Angela Grabitske's motion for leave to file an appeal is GRANTED.

2. The decision of the United States Bankruptcy Court for the Western District of Wisconsin granting appellee Brittingham & Hixon Lumber Co.'s motion to file an adversary proceeding objecting to the discharge of its claims against appellants is REVERSED.

Entered this 14th day of September, 2010.

> BY THE COURT:
> /s/
> BARBARA B. CRABB
> District Judge